UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DEAN S. MERCER, JR.,                    :
                                        :
                                        :
     v.                                 : 3:01-CV-1121 (EBB)
                                        :
                                        :
EDMOND BRUNT, CONNECTICUT               :
STATE POLICE LIEUTENANT, and            :
DAVID COYLE, CONNECTICUT                :
STATE POLICE SERGEANT, IN               :
THEIR INDIVIDUAL AND OFFICIAL           :
CAPACITIES                              :

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff Dean S. Mercer, Jr. ("Mercer" or "Plaintiff") is a Detective with the State of Connecticut, Department of Public Safety, Division of State Police. Since 1993, he has been employed in the Casino Unit, which covers the headquarters in Meriden, Foxwoods Casino, and Mohegan Sun Casino. Defendant Lieutenant Edmond Brunt ("Brunt") supervised the Casino Unit from September, 1999, through April, 2002. As the commanding officer of the Casino Unit, Brunt was ultimately responsible for the entire unit. Defendant Sergeant David Coyle ("Coyle" or, with Brunt, "Defendants") was assigned to the Casino Unit as its Executive Officer from May, 1999, through October, 2001. In this position, Coyle, from his office in Meriden, performed various administrative duties of the Casino Unit and provided occasional supervision of the detectives in the Casino Unit. Plaintiff has alleged that Coyle harassed him by making comments and threats regarding the potential transfer of Plaintiff. Plaintiff alleges

that Brunt wrongfully transferred him from Mohegan Sun back to Foxwoods, where he had worked from 1993 through 1998. At no time did he request a transfer to Meriden or Mohegan Sun, after that casino was opened.

In his Complaint, Mercer alleges that Defendants violated his rights to equal protection and due process. He further alleges that Defendants failed to accommodate his disabilities, which allegedly consist of hypertension, anxiety, and depression, in violation of the Americans with Disabilities Act ("ADA").

On March 28, 2002, this Court issued a Ruling on Defendants' Motion to Dismiss, dismissing several Counts of the original Complaint. Defendants now move for summary judgment as to the entire remaining Complaint.

## STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The facts are culled from the Amended Complaint, the parties' Local Rule 56(c)(1)-(3) Statements, the extensive memoranda of law, and the exhibits attached thereto.[1]/

The Casino Unit of the Connecticut State Police is

---

[1]/ The parties' failure to appropriately cite to the record has made the Court's duty that much more difficult. When a party cites to a transcript, not only must the page be cited, **but also the lines relied upon.** "Counsel and pro se parties are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule [Loc.R. Civ.P. 56] may result in sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment, and, when the opponent fails to comply, an order granting the motion." Counsel in this case are hereby forewarned of any future failure to comply with the pertinent provisions of the Local Rules.

responsible for maintaining law and order at the Mohegan Sun and Foxwoods casinos. Plaintiff requested a transfer to the Casino Unit, to which he was assigned in April, 1993. At this time, there were two duty stations for the Casino Unit, the office in Meriden, and the office at Foxwoods. Mercer was assigned to the third shift at Foxwoods from 1993 to 1998, from which he never requested a transfer to Meriden or Mohegan Sun, when it opened in 1998.

In 1998, Mercer's then-supervisor, Lieutenant Herman, changed Plaintiff's duty station from Foxwoods to Mohegan Sun. During 1999 and 2000, despite being moved to Mohegan Sun, Plaintiff continued to request that he be assigned to Foxwoods for special events and/or overtime.

On March 12, 2001, Mercer met with Brunt to complain that Coyle was harassing him by threatening to transfer and/or reassign him. At the meeting, Mercer and Brunt also discussed rumors which Mercer had heard with regard to his being reassigned to Foxwoods. Mercer was advised by Brunt that no final decision had been made. Further, at this particular meeting, Mercer "mentioned that the casino [Foxwoods] was smokey", but did not advise Brunt that it was a health issue for him. *Deposition of Plaintiff (November 21, 2002)* at 75:9-25.

On the very next day, March 13, 2001, Brunt met with Coyle about Mercer's harassment complaint. After the meeting between Brunt and Coyle, although Coyle still had contact with Mercer, he did not make any comments regarding transferring Mercer or

3

reassigning him. In fact, only Brunt had the authority to transfer Plaintiff; Coyle did not. *Id.* at 42; 6-14; 43;3-5; 51:9-15.

On March 27, 2001, Plaintiff was notified that he was being transferred back to Foxwoods, third shift. Plaintiff complained about his reassignment and shift, and a meeting of management and union officials was held to discuss Mercer's complaint. At this meeting, it was determined that Plaintiff would be considered for reassignment back to Mohegan Sun in three months time, provided he met certain conditions. One such condition involved Plaintiff's use of sick time.

As background, Plaintiff had worked third shift at Foxwoods for the approximately six years after he had been originally assigned there. *Depo.* at 22 1:4-17.

During all of these years, Plaintiff never complained to his supervisors about the amount of smoking at Foxwoods. Further, he never requested to be transferred from Foxwoods, due to said smoke. *Id.* at 24 1:4-6; 14-17. He never advised any of his supervisors in writing of his complaints in regard to the amount of smoke at Foxwoods. *Id.* at 75, 19-25. Following his transfer to Mohegan Sun, he did not ever complain about the smoking at that casino. *Id.* at 25; 1:12-14.

Plaintiff never advised his union representative that he had to go back to Mohegan Sun due to hypertension. Instead, "[t]he problem with the hypertension was brought on - - was aggravated

4

by Sergeant Coyle, and then after the meeting with Lieutenant Brunt, Lieutenant Brunt." *Id.* at 79: 3-13. However, Mercer never filed a workers' compensation claim for his hypertension or the "anxiety and depression" he was allegedly suffering as a result of Coyle's statements. *Id.* at 79 l: 2-12; 22-25, 80 l 1; 9-22. He did, however, miss work due to his "anxiety or depression" in April or May, 2001. *Id.* at 86 l: 15-24. Upon his return to work, he never requested any accommodations because "I was on medication, so I accommodated myself." *Id.* at 86 l:2-23.

According to Plaintiff, Coyle would be his supervisor on about five occasions a month and Coyle would visit Mohegan Sun approximately twice a month. *Id.* at 31 l: 3-11. Coyle never evaluated Plaintiff's performance, rather his immediate daily supervisors would. *Id.* at 31 l:12-16.

On February 28, 2002, a Performance Observation Report, subtitled "Sick Leave/Medical Certificate Requirement", was issued to Plaintiff by his Supervisor. An annual audit of sick leave usage for the calendar year 2001, performed by Brunt **of all Casino Unit officers**, *Id.* at 82 l:12-15, indicated that Mercer had taken 33 sick leave days from Jan. 1, 2001 - December 31, 2001. He had been counseled as to this excessive amount of sick leave on both April 10, 2001 and October 5, 2001. However, Mercer then took six more days off. Resultingly, he could have been placed on a medical certificate requirement, which meant

5

that every absence had to then be medically documented by a physician. He was not, however, as Brunt informed Mercer that Labor Relations advised against it. *Id.* at 84 1: 3-6

Plaintiff could not recall if any of his sick days had been due to respiratory illnesses, but he was sure that there was not a blood-pressure issue. *Id.* at 36 1:18-23. He "believe[d]" that he mentioned a blood-pressure issue to Sergeant Kelly, but he never requested special accommodations because of this health issue. *Id.* at 37 1:1-8. He never mentioned any health issues to Coyle during the year 1999 or 2000. *Id.* at 37 1:9-12. In Paragraph 12 of his Amended Complaint, Plaintiff avers that Coyle stated on one occasion, "[w]atch me get Mercer's blood pressure up." However, Coyle did not make this statement directly to Plaintiff and Plaintiff has no idea of who allegedly repeated it to him, or the date of such alleged statement. Finally, his hypertension was controlled by medication and did not affect his job performance. *Depo. of Plaintiff* at 64:20-25; 65:1-14; 86 1:11-14.

Since his transfer back to Foxwoods, up until the date of his deposition in November, 2002, Plaintiff had never requested a transfer from Foxwoods. *Id.* at 54:24-25; 55:1.

6

## LEGAL ANALYSIS

### I. The Standard of Review

### A. Federal Rule of Civil Procedure 56

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See also* Anderson v. Liberty Lobby, 477 U.S. 242, 256 (1986)(plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). Although the moving party has the initial burden of establishing that no factual issues exist, "[o]nce that burden is met, the opposing party must set forth specific facts demonstrating that there is a genuine issue for trial." Sylvestre v. United States, 771 F.Supp. 515, 516 (D.Conn. 1990).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. *Accord*, Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d. Cir. 1995)(movant's burden satisfied by showing if it can

7

point to an absence of evidence to support an essential element of nonmoving party's claim). In this regard, mere assertions and conclusions of the party opposing summary judgment are not enough to defend a well-pleaded motion. <u>Lamontagne v. E.I. DuPont de Nemours & Co.</u>, 834 F.Supp 576, 580 (D.Conn. 1993), *aff'd* 41 F.3d 846 (2d Cir. 1994).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party. . . ." <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d. 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 249-52 (scintilla of evidence in support of plaintiff's position insufficient; there must be evidence from which a jury could reasonably find in his favor).

The Second Circuit has held that summary judgment is appropriate in certain discrimination cases, regardless that such cases may involve state of mind or intent. "The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing

8

trials -- apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

## II. The Standard As Applied

### A. 42 U.S.C § 1983

In order to state a viable claim pursuant to Section 1983, a plaintiff must allege facts which indicate that the defendant has acted under the color of state law to deprive him of a constitutionally or federally protected right. Lugar v. Edmonson Oil Co., 457 U.S. 922, 930 (1982). See also Eagleston v. Guido, 41 F.3d 865, 872 (2d Cir. 1994) ("A Section 1983 claim has two essential elements: (1) the defendant acted under color of law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights or his constitutional rights or privileges.").

#### (i) Equal Protection Claim

The Equal Protection Clause of the Fourteenth directs that all persons similarly situated should be treated alike. Cleburne v. Cleburne Living Center, Inc. 473 U.S. 432, 439 (1984). Plaintiff has failed to identify even one similarly situated individual from whom he was treated differently. Further, Mercer claims that he was subjected to a "hostile work environment." He alleges that he was reassigned to Foxwoods, subjected to comments by Coyle, and subjected to a sick leave audit. Initially, it must be noted that, since his transfer back to Foxwoods, up until

the date of his deposition in November, 2002, Plaintiff has never requested a transfer from Foxwoods. *Plaintiff's Depo.* at 54:24-25; 55:1. As to comments from Coyle, Mercer was the only person who objected to their tenor. On March 13, 2001, Brunt met with Coyle about Mercer's harassment complaint. After the meeting between Brunt and Coyle, although Coyle still had contact with Mercer, he did not make any more comments regarding transferring Mercer or reassigning him. Secondly, the sick leave audit was prepared by Brunt and analyzed sick leave taken **by every officer in the Casino Unit.** Once again, Plaintiff has not been subjected to treatment which differs from that of any of his fellow officers in the Casino Unit. Lastly, as to his transfer back to Foxwoods, Brunt had the discretion to reassign troopers as needed to various duties within the Casino Unit. Mercer was not singled out for reassignment. Rather, other officers had been reassigned to other duty stations within the Unit. In fact, detectives were moving back and forth between stations on a somewhat regular basis. *Plaintiff's Depo.* at 70 l: 21-25; 71 l: 1-2; 9-25.

Accordingly, this Court holds that neither Brunt nor Coyle subjected Mercer to any violation of his Constitutional rights under the Equal Protection Clause. He was not, as a matter of law, subjected to any different treatment than those who were similarly situated to him; neither was he subjected to a "hostile work environment."

### (ii) Due Process under the Fourteenth Amendment

The Fourteenth Amendment guarantees an individual due process of law where the state deprives an individual of a constitutionally protected liberty or property interest. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). If no such interest is implicated, then no process is due the afflicted individual. Id. at 569-570.

Although the Constitution protects property interests, it does not create them. Rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits". Id. at 577 . Accord Donato v. Plainview-Old Bethpage Cent. School Dist., 96 F.3d 623, 629 (2d Cir. 1996)(New York law provides no basis for legitimate entitlement to continued employment). "A property right will not be recognized as cognizable under the due process doctrine if the person claiming the right has a mere abstract need or desire for, or unilateral expectation of the claimed right." DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 130 (2d Cir. 1998).

Plaintiff has cited no support for any violation of the Due Process clause. There exists no independent source under Connecticut law which supports Plaintiff's claim of entitlement to be left at Mohegan Sun and not be transferred back to Foxwoods. When he was reassigned to Foxwoods, Plaintiff lost no

11

pay or benefits. "Such an employment decision does not constitute a deprivation of a property interest under the Fourteenth Amendment." DeLeon v. Little, 981 F.Supp. 728, 735 (D.Conn. 1997)(transferred plaintiff lost no pay or benefits; no deprivation of property interest in such a case).

Accordingly, Plaintiff's claim under the Due Process clause fails as a matter of law.

### B. ADA

In order to set forth a *prima facie* case under the ADA a plaintiff must show by a preponderance of the evidence that : (1) his employer was subject to the ADA; (2) that he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job; and (4) he suffered an adverse employment action because of his disability. Ryan v. Grae & Rybicki, P.C., 135 F.3d F.2d 867, 869-70 (2d Cir. 1998).

Under the ADA, a plaintiff must plead and prove that he has a physical or mental impairment that substantially limits one or more of his major life activities; that he has a record of such impairment; or that he is regarded by the employer as having such an impairment. See 42 U.S.C. § 12102(2). Mercer alleges that his hypertension, anxiety, and depression cause him to be disabled within the meaning of the ADA. The Court disagrees. Mercer never requested a transfer from Foxwoods due to his hypertension. *Plaintiff's Depo.* at 77 1:24-25; 78: 1. He has never filed a workers' compensation claim for any of his alleged impairments.

*Id.* at 79 1:10-12; 80:20-22. As to his hypertension, anxiety, and depression, he was successfully medicated for all three. *Id.* at 86 1:11-14; 87 1: 20-23. Accordingly, pursuant to the mandatory authority of Sutton v. United Airlines, Inc., 527 U.S. 471 (1999) and the persuasive authority of Murphy v. United Parcel Service, Inc., 946 F.Supp. 872 (1996), *aff'd* 141 F.3d 1185 (10th Cir. 1998), *aff'd* 527 U.S. 516, 525 (1999), Mercer is not disabled within the meaning of the ADA. In Sutton, the Supreme Court determined that the ADA required that the determination whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment. "A person whose physical or mental impairment **is corrected by medication** or other measures does not have an impairment that presently substantially limits a major life activity." Sutton, 527 U.S. at 482-483 (emphasis added). The district court in Murphy, as affirmed by the Court of Appeals and the United States Supreme Court, specifically held that hypertension, when medicated, does not substantially limit a major life activity. 946 F.Supp. at 881. *See also* Schluter v. Industrial Coils, Inc., 928 F.Supp. 1437, 1445 (W.D.Wis. 1996)(insulin-dependent diabetic who can control condition with use of insulin not disabled within meaning of ADA). In accordance with this authority, this Court holds that, inasmuch as Plaintiff's alleged disabilities are completely controlled by medication, he is not substantially limited in major life activities. In fact, his deposition testimony is

13

activities. In fact, his deposition testimony is utterly silent as to such a claim.[2]/

In this case, the fourth prong of this test further controls. A tangible adverse employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998). In this Circuit, to constitute an adverse employment action under the ADA, a change in working conditions must be "materally adverse." Galabya v. New York City Board of Educ., 202 F.3d 636, 640 (2d Cir. 2000). A materially adverse change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities" and "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. (internal quotations and citations omitted). A lateral transfer, with no decrease in salary or benefits is not an adverse employment action within the meaning of the ADA. See e.g. Gronne v. Apple Bank For Savings, 2000 WL 298914 at * 5 (E.D.N.Y, Feb.

---

[2]/ To the contrary, Plaintiff testified that his hypertension did not affect his work, inasmuch as he was taking blood pressure medicine. Plaintiff's Depo. at 86 1:11-14. When he returned from a short absence from work, allegedly due to his anxiety and depression, he did not request any accommodation from his employer: "I was on medication, so I accommodated myself." Id. at 87 1:20-24.

14

where plaintiff simply traded places with her equal at second branch not adverse employment action under ADA), *aff'd* 2001 WL 30647 at * 3 (2d Cir. Jan. 12, 2000)(same reasoning); McCrary v. Aurora Public Schools, et al., 57 Fed.Appx. 362, 372 (10th Cir. 2003)(proposed transfer to equal position not adverse employment action under ADA); Doe v. DeKalb County Sch. Dist., 145 F.3d 1441, 1451 (11th Cir. 1998)(under ADA, purely lateral transfer, even if made against employee's wishes, not adverse employment action); Smith v. Alabama Dep't of Corrections, et al, 145 F.Supp. 1291, 1298 (M.D.Ala. 2001)(under ADA, employee who was denied lateral transfer did not suffer adverse employment action)

Hence, pursuant to these authorities, Mercer has not suffered any adverse employment action. For this reason, his claim for money damages under the ADA fails.

In his claim for damages, Plaintiff further seeks, inter alios, "[i]njunctive relief in the form of an order barring Defendants from continuing their harassment and discrimination against Plaintiff, and other similarly situated persons." The Eleventh Amendment does not preclude suits against state officers in their individual capacity for prospective injunctive relief **to prevent a continuing violation of federal law."** Henrietta D. V. Bloomberg, 331 F.3d 261, 287 (2d Cir. 2003). As noted above, this Court holds that neither Defendant violated the ADA, inasmuch as Plaintiff does not meet the standards for such a claim.

15

claim.

"A plaintiff seeking injunctive relief bears the burden of demonstrating [he] will suffer `real and imminent, not remote, irreparable harm' in the absence of a remedy." Henrietta D., 33 F.3d at 290, *quoting* Levin v. Harleston, 966 F.2d 85, 90 (2dCir. 1992). This Amended Complaint is devoid of any claim whatsoever that Plaintiff is in danger of suffering any real and imminent irreparable harm which is cognizable under the ADA.

## CONCLUSION

Plaintiff has failed to raise any genuine issues of material fact as to claims upon which he would bear the burden at trial. For each of the legal reasons set forth herein, Defendants' Motion for Summary Judgment [Doc. No. 24] is hereby GRANTED. The Clerk is directed to close this case.

SO ORDERED

/s/ ELLEN BREE BURNS

SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this 8th day of January, 2004.