UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEAN S. MERCER, JR.<br>PLAINTIFF, | : CIVIL ACTION NO.<br>: 3:01CV1121 (WWE) |
| VS. | |
| EDMOND BRUNT, CONNECTICUT<br>STATE POLICE LIEUTENANT; AND<br>DAVID COYLE, CONNECTICUT STATE<br>POLICE SERGEANT; IN THEIR INDIVIDUAL<br>AND OFFICIAL CAPACITIES,<br>DEFENDANTS, | : JANUARY 26, 2004 |

## MEMORANDUM IN SUPPORT
## OF PLAINTIFF'S MOTION TO RECONSIDER

**I.   INTRODUCTION**

On January 9, 2004, the court entered judgment against the plaintiff after granting the defendants' Motion for Summary Judgment as to the entire complaint.  Pursuant to Local Rule 9(e)(1), the plaintiff now files this Motion for Reconsideration of the Court's ruling for the following reasons: (1) The court did not consider the evidence set forth in the Plaintiff's 9(c)(2) Statement, paragraphs: 5, 11, 13, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 48, 50, 51, 52, 54, , 59, 60, 63, 64, 65, 68, 69, 70, 71, 72, 73, 75, 78, 79, 80, 81 and did not consider the evidence set forth in the Plaintiff's 9(c)(1) Statement, paragraphs 21 and 27 in evaluating the plaintiff's Equal Protection Claim; (2) The plaintiff alleged a claim of Substantive Due Process to which the defendants did not address and did not move for summary judgment against in their Memorandum in Support of the Motion for Summary Judgment, therefore the court should not have granted Summary Judgment against such claim; and (3) The court did not consider the evidence set forth in the Plaintiff's 9(c)

Statement, paragraphs 35, 36, 37, 38, 39, 40, 44, 48, 49, 50, 51 and 52 in the Court's evaluation of the plaintiff's ADA claim.

The following evidence set forth in the plaintiff's 9(c) Statement creates an issue of material with the facts as set forth in the Court's Statement of Facts section of the Ruling, therefore, it is respectfully requested that the court reconsider it's ruling granting the defendants' Motion for Summary Judgment.

### III. ARGUMENT

#### A. STANDARD FOR SUMMARY JUDGMENT

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Rule 56(c), F.R.C.P.; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202, 217 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact...." <u>Miner v. Gen. Falls</u>, 999 F.2d 655, 661 (2d Cir. 1993)(citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir. 1992).After discovery, if the nonmoving party "has failed to make sufficient showing on an essential element of his case with respect to which he has the burden of proof," then summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265, 273 (1986). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." <u>Aldrich</u>, 963 F.2d at 523. Thus "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper."

Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.) cert. denied, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d. 117 (1991). See also, Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).

In the context of a motion for summary judgment pursuant to Rule 56(c), disputed issues of fact are not material if the moving party would be entitled to judgment as a matter of law even if the disputed issues were resolved in favor of the nonmoving party. Such factual disputes, however genuine, are not material, and their presence will not preclude summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also, Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir, 1992).

### B. THE PLAINTIFF SET FORTH EXAMPLES OF DISPARATE TREATMENT TO SUPPORT HIS EQUAL PROTECTION CLAIM.

"In order to establish an equal protection violation under the Fourteenth Amendment the plaintiff must prove that (1) in comparison with others similarly situated, he was selectively treated, and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999.) "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class . . . individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials" may also bring an equal protection claim. Harlen Assoc. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2000) (citing LeClair v. Saunders, 627 F.2d 606, 608-10 (2d Cir. 1980)). The plaintiffs can establish a "class of one" equal protection claim by proving that (a) they were similarly situated to others, (b) they were intentionally treated

differently from others similarly situated, and (c) there is no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); African Trade & Information Center, Inc. v. Abromaitis, 294 F.3d 355, 362-63 (2d Cir. 2002). The court's duty to determine whether the defendants have offered a rational basis for the difference in the defendants' treatment "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). Nor does it authorize "the judiciary [to] sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." New Orleans v. Dukes, 427 U.S. 297, 303 (1976) (per curiam). Accordingly, the court under a rational-basis review affords governmental decisions a "strong presumption of validity," Heller v. Doe by Doe, 113 S.Ct. 2637, 2642 (1993); Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 462 (1988), and will uphold a governmental decision "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Heller v. Doe by Doe, 113 S.Ct. at 2642; Sullivan v. Stroop, 496 U.S. 478, 485 (1990).

Equal protection clause protects against any arbitrary classification of persons for unfavorable governmental treatment, not merely against such invidious classifications such as race or gender. Hayden v. Grayson, 134 F.3d 449 (1st Cir. 1998). Plaintiff must prove the decision maker acted because of, not merely "in spite of," its adverse effects on an identifiable group; the issue of whether defendant's conduct had a rationale basis does not arise unless the requisite discriminatory intent is first established. Hayden v. Grayson, 134 F.3d 449 (1st Cir. 1998). The Supreme Court held that a plaintiff states an equal protection claim where he has alleged he was intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562 (2000). The Court found that Olech's complaint could "fairly be construed as alleging" differential treatment from similarly situated property owners which, coupled with Olech's allegation that the Village's conduct was irrational and wholly arbitrary, was "sufficient to state a claim for relief under traditional equal protection analysis." Id. at 565. Such allegations, quite apart from a defendant's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis. Village of Willowbrook v. Olech, 120 S.Ct. 1073 (2000). The number of individuals in a class is immaterial for equal protection analysis. Village of Willowbrook v. Olech, 120 S.Ct. 1073 (2000).

The following evidence sets forth issues of fact in dispute with the court's Statement of Facts:

"In fact only Brunt had the Authority to transfer Plaintiff; Coyle did not." (Court's ruling, p. 4). Coyle had influence over the decision and met with Brunt to discuss the plaintiff. (9(c) Statement, ¶ 28.) Further, Coyle's threats were realized and the plaintiff was transferred immediately after the plaintiff made the complaint against Coyle to Brunt. (9(c) Statement, 5,11.)

"At this meeting, it was determined that Plaintiff would be considered for reassignment back to Mohegan Sun in three months time, provided he met certain conditions. One condition involved Plaintiff's use of sick time." (Court's ruling, p. 4.) The plaintiff's use of sick time was not a condition of the return to Mohegan Sun. (Exhibit 3.)

"Following his transfer to Mohegan Sun, he did not ever complain about the smoking at that casino." (Court's ruling, p. 4.) During the Bid Shift Meeting he expressed his desire to be transferred back to Mohegan Sun and requested transfers to Mohegan Sun on three separate occasions. (9(c) Statement .)

"Plaintiff continued to request that he be assigned to Foxwoods for special events and / or overtime." (Court's ruling, p. 3). The plaintiff only requested non-smoking events. (9(c) Statement.)

"At the meeting, Mercer and Brunt also discussed rumors which Mercer had heard with regards to his being reassigned to Foxwoods." (Court's ruling, p. 3.) The plaintiff also complained that there were rumors that he was to be taken off day shift and put on evening shift. (9(c) Statements, 56, 57, 58, 61, 63.)

"Mercer 'mentioned that the Casino (Foxwoods) was smokey', but did not advise Brunt that it was a health issue for him." The plaintiff advised Brunt about the health issue in a memo dated April 18, 2001. (Exhibit 1.)

"He had been counseled as to this excessive amount of sick leave on both April 10, 2001 and October 5, 2001. However, Mercer then took six more days off." (Court's ruling, p. 5.) The plaintiff was given three forms of discipline for the same event. First, the plaintiff was given a negative evaluation by Brunt. Second, the plaintiff was subject to a sick time audit which misrepresented his absences. The defendants argue that everyone was subject to the sick time audit, however, only the plaintiff was targeted and disciplined for his use of sick time. Further, the plaintiff had given Brunt doctor's notes for each time he was out sick during 2000. Additionally, the plaintiff's son was born in October, 2000, for which the plaintiff took eight days off following his birth. Third, the absences of 2000 were used during the bid shift meeting and was used by Brunt to support his decision to transfer the plaintiff. Brunt had used the same amount of sick days in three separate disciplinary measures, including the transfer, the refusal to transfer the plaintiff back to Mohegan after the Bid Shift Meeting, and in making the plaintiff submit to the Medical Certification. The six days that were taken off as sick days after being

counseled were four days for a scheduled surgery and two family sick days. (9(c) Statement 11, 20, 24, 28, 41, 54, 68, 69, 70, 71, 72, 82 .)

"[H]e could have been placed on a medical certificate requirement, which meant that every absence had to them be medically documented by a physician. He was not, however, as Brunt infomred Mercer that Labor Relations advised against it." (Court's ruling, p. 6.) The plaintiff <u>was</u> placed on Medical Certification on February 28, 2002. Prior to that, the plaintiff gave Sgt. Aalberg a memo explaining the plaintiff's use of sick time and doctors notes were provided. (Exhibit 5.) Sgt. Aalberg placed the plaintiff on Medical Certificate Requirement as directed by Brunt. (Exhibit 4.)

"Since his transfer back to Foxwoods, up until the date of his deposition in November, 2002, Plaintiff had never requested a transfer from Foxwoods." "Plaintiff has never requested a transfer from Foxwoods." (Court's ruling p.6, 10.) The plaintiff <u>made three separate requests</u> to be transferred back to Mohegan in July, August, November and was denied at each request by Brunt. (9(c) Statements, 56, 57, 58, 61, 63.)

"Plaintiff has filed to identify even one similarly situated individual from whom he was treated differently." The following shows the disparate treatment: Detectives with less seniority and with pending and serious discipline problems were not transferred to the unfavorable position at Foxwoods. (9(c) Statement, 30.) It was only the plaintiff who was forced to transfer to a position that he did not want. (9(c) Statement, 30, 31, 45, 48.) The defendants violated established procedure when they transferred the plaintiff to Foxwoods in that: (1)When a transfer is to take place the supervisor can ask for volunteers but neither Brunt nor Coyle asked for volunteers to be transferred to Foxwoods, they forced the Plaintiff to go to Foxwoods; (9(c) Statement .)(2) The reason that the plaintiff was transferred was not because of operational

needs; for exposure to Foxwoods or for the plaintiff's own individual needs, which are the reasons for transfers between the Casinos. (9(c) Statement 24.) In fact there were no (1) operational needs; (2) the plaintiff had already had substantial experience at Foxwoods; and did not want to go to Foxwoods and did not want the evening shift; and (3) The plaintiff was transferred to Foxwoods and two less senior officers who smoked and who would have preferred to work at Foxwoods were not transferred to Foxwoods at that time. (9(c) Statement 24.) This is a violation of the equal protection process because a a different set of procedures were used on the plaintiff.

"[T]he sick leave audit was prepared by Brunt and analyzed sick leave taken by every officer in the Casino Unit." (Court's ruling p. 10.) The plaintiff was the <u>only</u> officer to be transferred and disciplined because of his sick time use. (9(c) Statement 24, 26, 31, 34, 48, 49.)

### C. THE PLAINTIFF ALLEGES A CLAIM OF SUBSTANTIVE DUE PROCESS VIOLATION WHICH WAS NOT MOVED AGAINST AND WAS NOT ADDRESSED IN THE COURT'S RULING.

The plaintiff alleged a claim of Substantive Due Process to which the defendants did not address and did not move for summary judgment against in their Memorandum in Support of the Motion for Summary Judgment, therefore the court should not have granted Summary Judgment against such claim.

## **CONCLUSION**

Issues of material fact exist as to the plaintiff's substantive due process claim and equal protection claim. Therefore, the plaintiff respectfully requests that the court reconsider it's ruling, granting the defendant's Motion for Summary Judgment and deny such Motion.

PLAINTIFF,
DEAN S. MERCER

BY: *[signature]*
Erin O'Neil
Brewer & O'Neil, LLC
818 Farmington Avenue
West Hartford, CT 06119
(860)523-4055
Federal Bar #ct 23073

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on January 26, 2004, to all counsel and pro-se parties of record including:

Clerk
U.S. District Court
915 Lafayette Blvd.
Bridgeport, CT 06604


Antoria D. Howard
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

_____
Erin I. O'Neil